UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ISABEL ARANA,
        Plaintiff,

v.

ROBERT MOLTA, *et al.*,
        Defendants.

Civil Action No.: 1:23-cv-11133-JGD

**PLAINTIFF'S BRIEF PURSUANT TO THIS HONORABLE COURT'S DECEMBER 8, 2025 ORDER**

Plaintiff ISABEL ARANA ("Arana") hereby submits this brief in response to this Honorable Court's December 8, 2025 Order on the discrete issue of "whether[] Arana has standing to bring a Chapter 93A claim against the Moltas or WNAV on the theory that their alleged violations of Mass. Gen. Laws ch. 175, § 4F, amount to unfair and deceptive acts, omissions, or practices, in violation of Mass. Gen. Laws ch. 93A [("93A")], § 2." Order [Doc. No. 93]. The Order noted that, although the Defendants have moved for summary judgment with respect to these specific 93A violations that arise out of their respective violations of Mass. Gen. Laws ch. 175, § 4F, "no party has addressed the threshold issue of whether[] Arana suffered any injury because of the defendants' alleged violations of Section 4F." *Id.* Moreover, this Honorable Court instructed that:

> [a] plaintiff must establish three elements to demonstrate standing: (1) the plaintiff suffered an injury in fact; (2) the defendant caused the injury, meaning it is *fairly traceable to the challenged action* of the defendant…; and (3) it is likely… that the injury will be redressed by a favorable decision (emphasis added).

*Id.*, citing *In re Fin. Oversight & Mgmt. Bd.*, 110 F.4th 295, 308 (1st Cir. 2024) (quotation marks omitted). The Order continues, "[a]n injury 'must be both concrete and particularized and actual *or imminent*, not *conjectural or hypothetical*' and '[a]n injury is concrete only if it actually exists (emphasis added).'" Order, citing *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016).

**First, Defendants' violations of Mass. Gen. Laws ch. 175, §4F are not Arana's sole allegation giving rise to her 93A causes of action against them, nor has she brought a single cause of action against Defendants that relies solely on or is brought on the basis of their alleged violations of Mass. Gen. Laws ch. 175, § 4F in her Second Amended Complaint ("SAC") (see generally SAC [Doc. No. 47])—these unfair or deceptive acts or practices are in addition to other factual allegations in the SAC that form the basis of her 93A causes of**

1

***action, and thus Arana has Article III standing.*** Arana's SAC alleges that Defendants violated 93A by engaging in a laundry list of unfair or deceptive acts. *See* SAC at ¶¶ 101-120 (listing all unfair or deceptive acts or practices engaged in by the Moltas, including, but not limited to their failures concerning Mass. Gen. Laws. ch. 175, § 4F;[1] *see also id.* at ¶¶ 178- 199 (Third Cause of Action—a single 93A count against the Moltas consisting of laundry list of 93A violations);[2] *id.* at ¶¶ 121-149 (listing all unfair and/or acts or practices engaged in by WNAV, including, but not limited to its failures concerning Mass. Gen. Laws ch. 175, § 4F;[3] *id.* at ¶¶ 235- 271 (Sixth Cause of Action—a single 93A count against WNAV consisting of laundry list of 93A violations).[4]

Further, 93A "declares as illegal" any "unfair or deceptive acts or practices in the conduct of any trade or commerce." G.L. c. 93A, § 2. The terms "unfair" and "deceptive" are not defined in the statute. *See id.* at § 1. This was purposefully done by the Commonwealth's Legislature to allow the statute to apply to an ever developing and evolving commercial landscape. *See Mass. Eye and Ear Infirm. v. QLT Photothera., Inc.*, 552 F. 3d 47, 69 (1st Cir. 2009) ("A covered party is liable under [93A] if it engages in any 'unfair or deceptive act or practice'… [and] [t]o prove such a claim, it is n[ot]… necessary… that a particular act or practice violate common or statutory law… [b]ecause [t]here is no limit to human inventiveness in this field, Massachusetts courts evaluate unfair and deceptive trade practice claims based on

---

[1] Moreover, in the SAC, Arana specifically alleges that all of the Moltas' unfair and or deceptive acts or practices case her to "suffer pecuniary loss, personal injuries, pain and suffering, and other damages well in excess of $1,000,000." *Id.* at ¶ 119; *see also* Affidavit of Isabel Arana, attached hereto as **EXHIBIT A**, at ¶¶ 2-14 (detailing injuries sustained and damages incurred).

[2] The SAC also details the damages Arana suffered as a result of the Moltas' violations of 93A, including pecuniary loss, personal injuries, permanent disfigurement, emotional distress, and loss of enjoyment of life. *See* SAC at ¶¶ 195-199.

[3] Moreover, in ¶ 148 of the SAC, Arana specifically alleges that all of WNAV's unfair and or deceptive acts or practices case her to "suffer pecuniary loss, personal injuries, pain and suffering and other damages well in excess of $1,000,000." *See id.* at 148; *see also* **EXHIBIT A** at ¶¶ 2-14 (detailing injuries sustained and damages incurred).

[4] The SAC also details detail the damages Ms. Arana suffered as a result of WNAV's violations of 93A, including pecuniary loss, personal injuries, permanent disfigurement, emotional distress, and loss of enjoyment of life. *See* SAC at ¶¶ 265-269.

*the circumstances of each case*… Massachusetts leaves the determination of what constitutes an unfair trade practice *to the finder of fact*[.] (emphasis added)) (internal citations and quotations omitted)); *see also Casavant v. Norwegian Cruise Line Ltd.*, 460 Mass. 500, 503 (2011) (stating "whether a *particular set of acts*, in their *factual setting*, is unfair or deceptive is a *question of fact* (emphasis added)[.]"

Accordingly, the issue of standing with respect to Arana's 93A claims is not limited to the discrete issue of each Defendant's alleged failures concerning Mass. Gen. Laws ch. 175, § 4F violations—the relevant standing inquiry is whether Arana has standing to bring her 93A claim when considering "all of the circumstances of this case."—*i.e.*, *all of the 93A factual allegations*. In other words, Arana can make out a viable 93A claim by combining *all* of the "unfair and deceptive" factual allegations alleged in her SAC (*e.g.*, condition of the rotten pool deck boards, failure to timely repair the rotten pool deck boards after being provided notice, failures to disclose, etc.) *with* the factual allegations concerning the Moltas' failures to abide by the requirements of Mass. Gen. Laws 175, § 4F(b)) to make out both a viable 93A claim *and to meet the Article III standing requirements for same*. The same reasoning holds true for WNAV (combining misrepresentations on WNAV's webpage, failures to inspect, failures to disclose, etc.) with WNAV's Mass. Gen. Laws ch. 175, § 4F(b) facts. And this makes practical sense for 93A claims, because the particular facts of a case, when combined, may rise to the level of unfair or deceptive (*e.g.*, when viewing the liability insurance failures of the Moltas in light of the fact that they failed to maintain the pool deck in a safe condition and failed to timely repair the rotten pool deck boards after receiving notice from Arana's daughter before Arana was injured)—that these *combined* facts give rise to a violation of 93A and caused Arana concrete injuries. And again, similar analysis applies to WNAV (*e.g.*, WNAV, a long-toothed "hosting platform," held

itself out to the public as an "expert" in Cape Cod rentals (*see* SAC at ¶¶ 238-242)) and these facts, combined with their Mass. Gen. Laws ch. 175, § 4F failures, support a 93A violation and caused Arana concrete injuries. *See In re Fin. Oversight & Mgmt. Bd.*, 110 F.4th at 308. And again, *Arana has not brought a single cause of action against any of the Defendants that relies solely on or is brought solely on the basis of alleged violations of Mass. Gen. Laws ch. 175, § 4F.* *See generally* SAC.

**Second, Arana has also met her Article III burden as she has suffered an actual or imminent concrete and particularized injury fairly traceable to each Defendant's respective violations of Mass. Gen. Laws ch. 175, § 4F.** Even if this Honorable Court isolates the 93A allegations to just those concerning each Defendant's failures concerning Mass. Gen. Laws ch. 175, § 4F (it should not), the record evidence is clear that Arana has still met her Article III standing burden. Arana suffered an "injury in fact"[5] as it is undisputed that she suffered significant physical injuries (a broken tibia, knee injury, subsequent Achilles tendon tear, knee replacement, permanent disfigurement to her left leg, resulting pain and suffering, emotional distress, and loss of use and enjoyment of life (*see* **EXHIBIT A** at ¶¶ 2-14)—this is not remotely at issue here. Further, the monetary value of these damages is an issue for the trier of fact to decide—there is no requirement that Arana "prove" her damages are over $500,000 (or over $1,000,000, or whatever threshold). Arana's injuries "must be both concrete and particularized

---

[5] Moreover, it is clear there are record facts to clearly evidence that an "injury in law" occurred here as: (i)the Moltas failed to maintain the statutory minimum of $1,000,000 in liability insurance coverage as required by Mass. Gen. Laws ch. 175, § 4F(b) (*see* [Arana's] Responses to the Statement of Facts of the Defendants, Robert Molta and Catherine Molta, and [Arana's] Additional Statement of Facts [Doc. No. 66] at ¶¶ 21-22 (Moltas' $500,000 homeowner's insurance policy also attached as **EXHIBIT A** thereto)); and (ii) WNAV failed to maintain equal or greater coverage than the Moltas to meet the statutory requirements of §4F(b) (*see id.*, **EXHIBIT C** (WNAV insurance policy) and also failed to provide the requisite notice to the Moltas as required by §4F(c), (*see* [Arana's Reponses to the Rule 56.1 Statement of Material Facts in Support of Defendant WeNeedAVacation.com, LLC's Motion for Summary Judgment as to Counts IV and VI of [Arana's SAC] and [Arana's] Additional Statement of Facts [Doc. No. 71] at ¶¶ 24-27 (and corresponding WNAV Exhibit 9 (WNAV's purported "notice" which is insufficient under §4F(c))).

4

and actual or imminent, not conjectural or hypothetical," and "[a]n injury is concrete only if it actually exists[,]"and here, Arana's injuries clearly meet these requirements. *Hochendoner v. Genzyme Corp.*, 823 F.3d at 731.

Moreover, with respect to whether the Moltas' and WNAV's failures to abide by the requirements of Mass. Gen. Laws ch. 175, § 4F are "*fairly traceable to the challenged action* of the defendant[,]" this element is also readily met. *See In re Fin. Oversight & Mgmt. Bd.*, 110 F.4th at 308. It is clear that this element is met when analyzing all of the 93A allegations in the SAC (and in the summary judgment record) concerning Arana's injuries and each Defendant's "unfair and deceptive acts or practices" (*see* discussion, *supra*). But even when Defendants' failures with respect to Mass. Gen. Laws ch. 175, § 4F are taken in isolation, Arana's injuries are "fairly traceable" to these same failures. Simply put, if Arana's injuries result in a jury verdict of any amount over $500,000 against the Moltas (highly likely given her injuries here), Arana will not be compensated via an insurance policy that the Moltas were *required* to maintain (at least $1,000,000). This "injury" is both "imminent" and "not conjecture or hypothetical," and it is directly caused by the Moltas' failures to maintain $1,000,000 in liability insurance. Further, the Moltas produced only information concerning what appears to be simply a *homeowner's* insurance policy for $500,000. However, even if their insurer has stayed true to its "duty to defend" the Moltas here, there is no guarantee that it will not deny coverage if there is an adverse judgment against the Moltas. Indeed, Mass. Gen. Laws ch. 175, § 4F (d) expressly permits an insurer to disclaim such homeowner's coverage in a situation like this.

Lastly, a similar analysis applies to WNAV's failures—Arana's injuries (over $500,000) are "fairly traceable" to WNAV's failures under Mass. Gen. Laws ch. 175, § 4F—WNAV's failure to send notice to the Moltas as required and/or WNAV's failures to maintained additional

5

liability insurance coverage to cover the Moltas or Arana. And there is nothing in WNAV's insurance policy that evidences any coverage for Arana. *See* WNAV's Exhibit 9.

Respectfully submitted,

Plaintiff,

ISABEL ARANA,

By her attorneys,

/s/ Edward C. Cumbo

Edward C. Cumbo (BBO No. 661284)
e.cumbo@rc-llp.com
Robert Richardson (BBO No. 676947)
r.richardson@rc-llp.com
RICHARDSON & CUMBO, LLP
101 Federal Street, Suite 1900
Boston, MA 02110
Tel: (617)217-2779

DATED: January 16, 2026

## CERTIFICATE OF SERVICE

I, Edward C. Cumbo, hereby certify that a true copy of the foregoing document was filed electronically through the Court's CM/ECF system, is available for viewing and downloading from the ECF system, will be sent electronically to counsel of records as registered participants identified on the Notice of Electronic Filing and via first class mail and/or electronic mail to all non-registered participants identified on the Notice of Electronic Filing on this 16th day of January, 2026.

/s/ Edward C. Cumbo

Edward C. Cumbo

**EXHIBIT A**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ISABEL ARANA,<br>  Plaintiff,<br><br>v.<br><br>ROBERT MOLTA, *et al.*,<br>  Defendants. | Civil Action No.: 1:23-cv-11133-JDH |

### AFFIDAVIT OF ISABEL ARANA

I, Isabel Arana, do hereby depose and state:

1. My name is Isabel Arana and I am the Plaintiff in the above-captioned action.

2. I was injured when I fell through rotten pool deck boards at 49 Barristers Walk, Dennis, Massachusetts in summer of 2020—a property owned by Robert and Catherine Molta.

3. My family and I rented this property as a "short-term" rental using WeNeedaVacation.com, LLC's ("WNAV") website.

4. I personally reviewed WNAV's web page and was impressed by their vast experience in the short-term rental space and all of the services they offered owners/landlords who rented these short-term vacation rentals on its website.

5. When I fell through the rotten pool deck boards I sustained significant injuries to my leg—primarily my knee.

6. I broke my tibia and severely injured my knee. I also hurt my shoulder and sustained a large hematoma on my leg by my knee. I was in severe pain after I fell through the rotten pool deck boards.

7. Since these injuries, I have seen countless doctors and gone to countless doctor appointments, attended countless physical therapy sessions, had MRI's and x-rays taken, and I recently had knee replacement surgery on my injured knee.

8. I also injured my Achilles' tendon after the injuries I sustained falling through the rotten pool deck boards, no doubt because of these prior injuries—I suffered a partial tear of my Achilles.

9. Over the last five (5) years since I fell through the rotten pool deck, I have been in constant pain and have had to manage my pain as best I can—usually through some type of medication.

10. The pain has made it difficult to sleep, walk, and attend a lot of activities I used to do before I was injured. I cannot walk my dog much anymore, cannot attend many of my grandchildren's activities, and cannot do activities that require a lot of walking.

11. I also have a permanent hematoma on my leg, by my injured knee that makes it embarrassing to wear shorts or a skirt—this "lump" on my leg is unattractive, does not seem like it will go away, and is very noticeable still five-plus years later.

12. Even though I had knee replacement surgery, I still do not feel like I did before I fell through the rotten pool deck—it just does not seem like I will ever be the same.

13. All of this medical treatment has cost tens of thousands of dollars, if not more, in medical costs for treatment.

I, Isabel Arana, do solemnly swear under the pains and penalties of perjury that the foregoing statements are true and accurate to the best of my personal knowledge and belief as of this 16th day of January, 2026.

*/s/ Isabel Arana*
Isabel Arana